**UNITED STATES of America to the Use of JOHN T. EVANICK & COMPANY, Plaintiff,**

v.

**MERRITT–CHAPMAN & SCOTT CORPORATION et al., Defendants.**

Civ. A. No. 5818.

United States District Court
M. D. Pennsylvania.
July 27, 1960.

James J. Zaydon, Edward M. Murphy, Scranton, Pa., for plaintiff.

O'Malley, Morgan, Bour & Gallagher, Scranton, Pa., for defendants.

FOLLMER, District Judge.

### Findings of Fact

1. This is an action under the Miller Act, 40 U.S.C.A. § 270b, and this Court has jurisdiction.

2. Under date of May 27, 1952, the defendant, Merritt-Chapman & Scott Corporation, entered into a contract with the United States of America known as Contract No. DA–36–109 eng.–2901 for the construction of buildings, utility systems and site improvements for the Signal Corps Depot, Tobyhanna, Monroe County, Pennsylvania. Said contract was to be performed and executed at Tobyhanna, Monroe County, Pennsylvania, which is in the Middle District of Pennsylvania.

3. Under date of May 27, 1952, the defendant, Merritt-Chapman & Scott Corporation, as principal and the other defendants as sureties entered into a payment bond in accordance with the above Act of Congress to the United States of America in the penal sum of $2,500,000, conditioned for payment to all persons supplying labor and material in the prosecution for the work provided for in the contract above mentioned.

4. The defendant, Merritt-Chapman & Scott Corporation, proceeded to perform the work provided by the said contract and has, by and through its subcontractor, substantially completed the same. No final settlement of the contract had been made to the date of commencement of suit (January 25, 1957) by the United States of America with Merritt-Chapman & Scott Corporation, so that the period of limitations, namely, one year after the date of final settlement of such contract, provided by the statute above mentioned had not expired when suit was commenced.

5. The prime contractor is Merritt-Chapman & Scott Corporation.

6. Frederick Raff Company is a subcontractor on the job under the defendant, Merritt-Chapman & Scott Corporation.

7. John T. Evanick & Company, plaintiff, hereinafter called plaintiff Evanick, is a subcontractor on said job under Frederick Raff Company.

8. On October 9, 1952, the plaintiff Evanick entered into a written contract with Frederick Raff Company (Exhibit E–2, said exhibit also being Exhibit "B" attached to plaintiff Evanick's complaint) for coal and ash handling equipment at the Tobyhanna Signal Depot for the price of $109,952.

9. The contract (Exhibit E–2) provides: "Price to be adjusted in accordance with Government Regulations on steel, not to exceed 10% escalation otherwise, price is firm."

10. The last of the labor was performed and the last of the material was furnished by the plaintiff on November 19, 1954, under the said contract with Frederick Raff Company, for the unpaid balance of which claim is here made.

11. The supervisory personnel of the defendant, Merritt-Chapman & Scott Corporation, on the Tobyhanna project here involved were three employees of Merritt-Chapman & Scott Corporation known as Mr. Card, Mr. Rodriquez and Mr. Dean.

12. An oral notice was given to the prime contractor, Merritt-Chapman & Scott Corporation, by the plaintiff, John T. Evanick & Company, in the manner stated by John T. Evanick in his testimony as follows (Transcript of Testimony, pages 13, 49 and 50):

"A. I went first to Mr. Rodriquez sometime in November with a copy of the invoices and the amount of money owed to us by Raff Company, and they said they would help me out. They said I should write

a letter to the main office as to the balance that was owed, and if I didn't get paid, the Raff Company wouldn't get paid that balance.

"Q. You testified you talked to Mr. Rodriquez and who else? A. I went to see Mr. Rodriquez, and he brought in Mr. Dean and Mr. Card.

"Q. And you gave them what? A. Duplicate invoices.

"Q. And what did those invoices evidence? A. It showed the amounts of payments we received and the amounts owed us.

\*   \*   \*   \*   \*   \*

"A. It showed the unpaid balance, yes.

\*   \*   \*   \*   \*   \*

"A. It showed to whom supplied \*   \*   \*.

\*   \*   \*   \*   \*   \*

"A. \*   \*   \* We also made demands on Merritt-Chapman & Scott, and the last demand we made we paid a visit to Merritt-Chapman & Scott at Tobyhanna and told them that since we were unable to get money from Frederick Raff, that we had to have money to pay off the people that we owed money, and I spoke to Mr. Dean and Mr. Rodriquez and Mr. Card, and they advised me they would inform their New York office so I would be paid and so I would be protected, and on their advice I wrote that letter on December 15.

"Q. When did this conversation take place with the representatives of the Merritt-Chapman & Scott? A. Say, the last week in November or the first week in December. I can't pick the exact date.

\*   \*   \*   \*   \*   \*

"Q. What year? A. 1954.

"Q. I believe you have testified this morning you gave the invoice to the Raff Company? A. I left a duplicate set of copies of invoices with Mr. Rodriquez at Tobyhanna.

"Q. What did those invoices show? A. They contained the base price of the contract, and also the increase, and the extra charges, and the amounts paid us, and what balance was owing to us."

13. Plaintiff, John T. Evanick & Company, gave a written notice to the prime contractor, Merritt-Chapman & Scott Corporation, on December 16, 1954, in accordance with previous oral discussions, as follows:

"December 16, 1954
"Merritt-Chapman & Scott
"260 Madison Ave.,
"New York, N. Y.
 "Re: Tobyhanna Signal Depot
   Project
 "Gentlemen:

"We wish to go on record and state that Frederick Raff Co. still owes us a balance of $23,958.20 on the work done at Tobyhanna Signal Depot.

   "Very Truly Yours,
   "J. T. Evanick & Co.
   "J. T. Evanick
"JTE: dew"

14. Both the oral and written notice was given by plaintiff, John T. Evanick, to the prime contractor, Merritt-Chapman & Scott Corporation, (the contractor furnishing the payment bond) within ninety days from the date on which John T. Evanick & Company did and performed the last of the labor and furnished and supplied the last of the material for which the claim was made.

15. The total steel required by John T. Evanick & Company was 400,700 pounds. Of this amount the McGregor Architectural Iron Co., Inc., furnished under its three contracts with John T. Evanick & Company a total of 190,000 pounds. Of this amount the contract for head posts and bridle posts accounted for 35,535 pounds with a unit contract price of 17¢ per pound and no evidence that the cost exceeded this amount. The McGregor contract referred to as the "coal bunker" contract accounted for 142,000 pounds. This contract provided: "In the event mill delivery of steel is not

procurable, buyer agrees to pay the difference in steel cost." The contract was based on a unit price of $0.175 per pound or $710 over a 17¢ unit price and there was an $848.52 steel differential in the performance of the contract, making a total steel escalation thereon of $1,558.-52. The third McGregor contract involving two reclaiming hoppers accounted for 12,000 pounds of steel, but there is no evidence as to unit price or differential in its performance. The remaining portion of the 400,700 pounds, namely, 210,700 pounds, was predicated upon a basic unit price of 17¢ per pound or a total estimated cost of $35,819, on which there was an adjustment under Government Regulations ranging from 10% to 25%. The Evanick contract provided for an adjustment "not to exceed 10% escalation," which would make a total steel price escalation thereon of $3,581.90. John T. Evanick & Company is therefore entitled to $1,558.52 plus $3,581.90, or a total of $5,140.42, as escalation on cost of steel.

16. John T. Evanick & Company, pursuant to written order of Frederick Raff Company, No. 5955, dated June 17, 1954, furnished "buss duct and buss duct trolley conductor" as an extra in the sum of $872.

17. John T. Evanick & Company claimed three other extras in the amounts of $125.12, $525, and $32, but failed to show any written authorization for the same or submit any proof of the performance thereof.

18. The sum of $98,868.12 has been paid on the contract.

19. The plaintiff, John T. Evanick & Company, performed the work under the contract and is entitled to claim therefor as follows:

| | |
|---|---:|
| Contract Price | $109,952.00 |
| Extras | 872.00 |
| Escalation on steel | 5,140.42 |
| Total | $115,964.42 |
| Less Payments | 98,868.12 |
| Balance | $17,096.30 |

20. There was an inspection of the completed work on December 14, 1954.

## Conclusions of Law

1. The plaintiff, John T. Evanick & Company, is entitled to the benefits of the Miller Act, 40 U.S.C.A. § 270b.

2. The notice given by John T. Evanick & Company to the prime contractor, Merritt-Chapman & Scott Corporation, was a sufficient notice under the Miller Act.

3. The notice was given within ninety days from the date on which John T. Evanick & Company did and performed the last of the labor and furnished and supplied the last of the material for which such claim is made.

4. The plaintiff, John T. Evanick & Company, is entitled to a judgment against the defendants in the amount of $17,096.30 with interest from December 15, 1954.

## Discussion

Merritt-Chapman & Scott Corporation as the prime contractor entered into a written contract with the United States of America for certain construction for the Signal Corp Depot, Tobyhanna, Monroe County, Pennsylvania, known as the Tobyhanna Project, and furnished to the United States of America a payment bond with sureties, being the other defendants in this action, for the protection of persons supplying labor and material for the prosecution of the work provided for in said contract, in accordance with the provisions of the Miller Act (40 U.S.C.A. § 270a). The prime contractor subcontracted with Frederick Raff Company for a portion of the construction and Frederick Raff Company in turn subcontracted a portion to the plaintiff, John T. Evanick & Company. Plaintiff, claiming a balance due from Raff, invoked the provisions of the Miller Act and instituted suit on the bond. The prime contractor and the sureties on the bond contended that sufficient notice was not given the prime contractor within the time prescribed by the Act.

There was a conflict of testimony as to the date of completion. Raff contended that the contract was completed in June 1954, but his testimony on this matter was vague and in the nature of a guess. Evanick, on the other hand, did have documents which bore out his contention that material for the contract was purchased on September 9, 1954, and the final work done September 19, 1954, with an inspection on December 14, 1954.

Pursuant to a letter of December 20, 1954, Evanick sometime after December 20, 1954, replaced several defective driving wheels on a weight larry. The basis of such repair was fully understood at the time as is evidenced by the December 20, 1954, letter of the prime contractor to Raff which stated, inter alia:

"'1. Reference is made to Sections SC–9, 43–26(b) and 43–39 of the Specifications for subject contract. Section 43–39 is especially germane and stipulates in part that equipment (e. g. coal handling equipment) "shall be guaranteed from a period of one year from the date of final acceptance thereof against defective *materials, design* and *workmanship*" (italics furnished).'"

Likewise, on June 9, 1955, two ironworkers were employed one hour each inserting some missing bolts in the coal bunker, and on June 20, 1955, two ironworkers worked four hours each on the bridle posts and head posts of the Sauerman rigging, placing some missing bolts.

The time for the giving of notice under the Miller Act may not be extended by correcting defects (in the instant case apparently without charge). If it were otherwise, the time for such notice might remain in chaos and depend upon the discovery of defects in construction even a year or more after completion of the work, United States of America for Use and Benefit of J. A. Edwards & Co. v. Peter Reiss Const. Co., Inc. et al., D.C. E.D.N.Y., 174 F.Supp. 264. This minor maintenance and repair work did not alter the fact that the completion date was September 19, 1954, with the inspection of the work on December 14, 1954, and that December 16, 1954, was within the ninety-day period for the notice.

The important question is whether the notice which was sent by ordinary mail complied with the provisions of the Act "That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."

In Fleisher Engineering & Construction Co. et al. v. United States for Use and Benefit of Hallenbeck, 1940, 311 U.S. 15, 18, 61 S.Ct. 81, 83, 85 L.Ed. 12, the Supreme Court said:

"In giving the statute a reasonable construction in order to effect its remedial purpose, we think that a distinction should be drawn between the provision explicitly stating the condition precedent to the right to sue and the provision as to the manner of serving notice. The structure of the statute indicates the distinction. The proviso, which defines the condition precedent to suit, states that the material-man or laborer 'shall have a right of action upon the said payment bond upon giving

written notice to said contractor' within ninety days from the date of final performance. The condition as thus expressed was fully met. Then the statute goes on to provide for the mode of service of the notice. 'Such notice shall be served by mailing the same by registered mail, postage prepaid,' or 'in any manner' in which the United States marshal 'is authorized by law to serve summons.' We think that the purpose of this provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. Rather, we think that Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown."

In the present case it is not denied that the written notice, sent to the prime contractor pursuant to its own suggestion, was received by it. The only question is "was the notice sufficient."

In Coffee et al. v. United States, for Use and Benefit of Gordon, 5 Cir., 157 F.2d 968, Gordon had contracted with a subcontractor of Coffee, the prime contractor. Within the ninety-day period Gordon called on Coffee and advised him of the balance due from the subcontractor. Coffee and Gordon stood together and examined a statement of the various items of indebtedness. The Court held that a claim on the bond was contemplated and that under the circumstances there was sufficient written notice. In Houston Fire & Casualty Ins. Co. v. United States of America for Use and Benefit of Trane Co., 5 Cir., 217 F. 2d 727, 729, the plaintiff, a materialman, had furnished materials to "Denton," a subcontractor of "Bailey," the prime

contractor. The demand and submission of the claim for an unpaid balance was made in an oral discussion between plaintiff and the prime contractor, followed by a letter of acknowledgment from the prime contractor. The Court said:

"* * * Conceding that the statute was not literally complied with because plaintiff did not send a written notice by registered mail, indeed it did not send a written notice of any kind, it (plaintiff) yet insists: that what occurred in connection with noticing the claim, plaintiff's oral notice to the principal contractor and a written acknowledgment of the request, and full recognition of Denton's indebtedness to Trane, and the fact that it had not been, but must be, paid was more effective than if a written notice had been sent by the materialmen and fully complied with the essential statutory requirements of bringing home in writing to the principal contractor the requisite knowledge of the claim and debt.

"* * * it is sufficient that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor. * * *"

Several cases were cited by defendant as negativing plaintiff's right of recovery. In Bowden v. United States, 9 Cir., 239 F.2d 572, the subcontractor had written the prime contractor a letter listing creditors of the subcontractor (including plaintiff as a supplier of materials) and the amount due each. The supplier, however, had no knowledge of this letter until the trial. The supplier had written no letter to the prime contractor, had made no oral demand upon the prim contractor and had not authorized the subcontractor's letter. The Court there held, and correctly so, that the letter sent by the subcontractor did not constitute sufficient notice under the Miller Act since it was not sent on the authority of the supplier.

In United States for Use and Benefit of Noland Co. v. Skinner & Ruddock, Inc., D.C.E.D.S.C., 164 F.Supp. 616, 618, a letter was sent by the plaintiff to the prime contractor which stated: "In accordance with a request made by your Mr. Skinner, this is to advise that as of this date Williams Piping and Heating Company (the subcontractor) owes the Noland Company (the plaintiff) $3,128.11 on the Officers Mess job at Charleston Airbase which monies were due and payable in October. We feel sure that this customer will pay us as soon as sufficient collections are effected, and we are glad to work with you in any way for the mutual betterment of everyone concerned." This letter was written at the request of defendant, was during the course of the work, not within the ninety days after completion and was the only written notice of the indebtedness sent to the defendant. The Court there said:

"* * * The letter in this case, without explanation of its vague or ambiguous terminology, does not comply with the Miller Act as a matter of law in that it does not assert a claim nor does it advise, expressly or by implication, that the supplier is looking to the contractor for payment of the subcontractor's bills, which is a substantial requirement of the Act. The testimony fails to develop or explain the language of the letter as an assertion of a claim by showing the existence of circumstances affecting the use—plaintiff and the defendant Skinner & Ruddock, which indicate that the letter was sent as a Miller Act claim or that its terminology was such, surrounding circumstances considered, that it reasonably would be received as an assertion of such a claim by the defendants."

In the present case, on the contrary, the written notice was within the ninety-day period, the oral demand of plaintiff upon defendant, the submission of the invoices and the discussion thereon, together with all the other surrounding circumstances indicate that the letter was sent as a Miller Act claim and that it was received by the defendant as such a claim.

In United States for Use of Old Dominion Iron & Steel Corp. v. Massachusetts Bonding & Ins. Co., 3 Cir., 272 F. 2d 73, 75, plaintiff was a supplier of a subcontractor. The subcontractor within the ninety-day period (on January 22, 1957) wrote a letter to the prime contractor advising it that he (the subcontractor) had a number of creditors of which plaintiff was one. The letter was not requested or authorized by plaintiff and nothing, in fact, was done by plaintiff. The subcontractor subsequently, on February 12, 1957, advised plaintiff that he had written such letter. The Court in following the Bowden case distinguished the Coffee and Houston cases and said:

"The letter of February 12, 1957, does not avoid the explicit result of the Bowden case, supra. In neither the Bowden case nor the case at bar did the plaintiff-supplier take any action to protect his interests by complying with the Act. The mere writing of a letter by the subcontractor to the plaintiff, informing plaintiff that his claim had been listed with the prime contractor, cannot cure the fatal defect in plaintiff's case.

"It must be noted that in the Coffee case, supra, there was a written exhibition to the contractor by the claimant as a notice of his claim. In the Houston case there was 'oral notice to principal contractor' from the claimant, and a written 'acknowledgment of the request, and full recognition of Denton's (subcontractor) indebtedness to Trane (materialman).' * * * *"

Plaintiff in the present case did not sit by idly and do nothing. He made an oral demand upon the prime contractor, presented to and discussed with the prime contractor the written statement of amounts due and by whom and followed this with a further written demand upon

the prime contractor, which in the light of what preceded, coupled with the prime contractor's own suggestions, could not have been construed by such prime contractor as intended to be or being anything other than a notice under the Miller Act, and what occurred here was in my opinion sufficient compliance with the requirements of the Act.

Let form of judgment be submitted in accordance with the findings of fact and conclusions of law herein.