UNITED STATES of America To the Use of EXCAVATION CONSTRUCTION, INC., a Maryland Corporation, Plaintiff,

v.

GLENN–STEWART–PINCKNEY BUILDERS AND DEVELOPERS, INC., a Pennsylvania Corporation, et al., Defendants.

Civ. A. No. 4656.

United States District Court,
D. Delaware.

Jan. 20, 1975.

Stuart B. Young, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Leonard L. Williams, Wilmington, Del., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

LATCHUM, Chief Judge.

This case was tried by the Court without a jury on December 16, 1974. After carefully considering and weighing the testimony of the witnesses [1] and the documentary evidence adduced at trial, the Court enters the following findings of fact, conclusions of law and judgment:

### FINDINGS OF FACT

1. This action was brought under the Miller Act, 40 U.S.C. §§ 270a–270d, by the use plaintiff, Excavation Construction, Inc. ("Excavation"), seeking to recover $16,112 from the defendants Glenn-Stewart-Pinckney Builders and Developers, ("Glenn-Stewart"), Wisconsin Surety Corporation ("Wisconsin"), and Rural Mutual Insurance Company ("Rural") on a payment bond furnished to the United States government by Glenn-Stewart and secured by Wisconsin and Rural for labor and materials allegedly furnished by Excavation to a subcontractor of Glenn-Stewart in the prosecution of work performed under a federal contract awarded to Glenn-Stewart by the Army Corps of Engineers.

2. The defendant Glenn-Stewart was general contractor for a federal project located near Reedy Point Bridge in this District.[2] ("Reedy Point project").

3. As a condition precedent to the award of the federal contract for the Reedy Point project,[3] Glenn-Stewart furnished to the United States a payment bond secured by defendants Wisconsin and Rural "guaranteeing the payment of all persons supplying labor and materials in the prosecution of the work provided for in said [Reedy Point] project." [4]

4. Alex Feinman, Inc. ("Feinman") was a subcontractor of defendant Glenn-Stewart for the Reedy Point project.[5]

5. On June 1, 1972, Excavation orally contracted with subcontractor Feinman to rent Feinman two payhaulers with operators at a cost for each of $53.00 per hour and with a guaranteed minimum one month rental. This contract was confirmed in a letter from Excavation to Feinman dated June 2, 1972.[6]

6. The payhaulers and operators were provided by Excavation to Feinman and were used by Feinman on the Reedy Point project for a total of approximately 16 hours for each payhauler and operator.[7]

7. The payhaulers were found to be unsuited for the work required by the Reedy Point project and thus Feinman was ordered by Glenn-Stewart to remove

---

1. Since the parties did not order a trial transcript, the testimony has not been transcribed.

2. Docket Item 27, par. (c)(1) and testimony of George E. Stewart (Secretary-Treasurer of Glenn-Stewart).

3. 40 U.S.C. § 270a.

4. Docket Item 27, par. (c)(3), Docket Item 4, pars. 2 and 3.

5. Docket Item 27, par. (c)(2), Docket Item 4, par. 6.

6. "Dear Alex:

   This will confirm our rental agreement by phone on June 1, 1972 concerning guaranteed rental for one (1) month, 40 hour week, on . . . two (2) International 140 off high-

way truck at $53.00 per hour each with operators.

   You will assume responsibility to move equipment to and from the jobsite at Reedy Point, Delaware City.

   Thanks for the opportunity to be of service to you.

   Very truly yours,

   EXCAVATION CONSTRUCTION, INC.

   Homer Garner"

   (Plaintiff's Exhibit 2).

7. Docket Item 27, par. (c)(5), defendant's Exhibit 4, and the testimony of Peter S. Graziano (operator of one of the payhaulers) and Paul Closkey (supervisor of Reedy Point project for Glenn-Stewart).

them from the project upon orders of the Corps of Engineers.[8]

8. The last day that Excavation's payhaulers or operators performed work and labor at the Reedy Point project was June 29, 1972.[9]

9. The payhaulers were returned to Excavation by July 28, 1972 and the bill for their return was paid by Glenn-Stewart.[10]

10. Excavation billed Feinman on June 30, 1972 a total of $16,112 for the rental of the payhaulers and the use of the operators during the month of June, 1972.[11] The amount of the bill was based on the guaranteed one month minimum rental and not on any actual use of the payhaulers and operators at the Reedy Point project. No additional bill for the payhaulers and operators was submitted by Excavation to Feinman.

11. The $16,112 June 30 bill to Feinman was never paid.[12]

12. Patricia Mallory ("Mallory") was general agent for the defendant Glenn-Stewart handling all contractual matters pertaining to the Reedy Point project. As such, she had the responsibility of handling all of Glenn-Stewart's office and paper work involving the Reedy Point project including pricing and estimating the job and paying subcontractors. She worked out of Glenn-Stewart's offices.

13. Homer N. Garner ("Garner") was purchasing agent for Excavation during the summer of 1972.

14. Several telephone conversations took place between Mallory and Garner during late June and July 1972 concerning the payhaulers. In one such conversation Garner indicated that Feinman had the responsibility for returning the payhaulers to Excavation and Mallory assured Garner that Glenn-Stewart would pick up the bill for the return of the payhaulers to Excavation.[13]

15. In a later July 1972 telephone conversation between Mallory and Garner the topic of the $16,112 bill for the rental of the payhaulers and operators was discussed. With regard to this conversation, Garner testified that:

a) he told Mallory that the $16,112 bill had not been paid by Feinman;

---

8. Defendant's Exhibit 5 and the testimony of Paul Closkey and Homer N. Garner (purchasing agent of Excavation) and others.

9. Docket Item 27, par. (c) (8).

10. Docket Item 27, par. (c) (10), defendant's Exhibit 1 and testimony.

11.

"June 30, 1972
Re: Reedy Point Bridge—
Delaware City, Delaware

Alex Feinman, Inc.
P.O. Box 579
Levittown, Pennsylvania

Rental

(2) International 140 Payhaulers

| | |
|---|---:|
| W/E 6/9/72—64 hrs. at $53.00 | $ 3,392.00 |
| W/E 6/16/72—80 hrs. at $53.00 | 4,240.00 |
| W/E 6/23/72—80 hrs. at $53.00 | 4,240.00 |
| W/E 6/30/72—80 hrs. at $53.00 | 4,240.00 |
| Total | $16,112.00" |

(Plaintiff's Exhibit 3).

---

12. Docket Item 27, par. (c) (13).

13. Glenn-Stewart did pick up this bill. See par. 9 *supra*.

b) the $16,112 was owed and due to Excavation;

c) Excavation expected to be paid;

d) Mallory told him that Glenn-Stewart would assume responsibility for the bill;

e) Mallory requested a copy of the bill be sent to her; and

f) she requested that a copy or written explanation of Excavation's contract with Feinman be sent to her.

16. With regard to this same conversation, Mallory testified that:

a) Garner probably told her that $16,122 was due to Excavation from Feinman;

b) Garner told her Excavation was having difficulty contacting Feinman;

c) she told Garner that she wanted information concerning the Excavation-Feinman contract including a copy of the purchase order, a copy of the bill and all the particulars relating to the bill;

d) Garner told her he would send the above requested information to her;

e) Garner never indicated that Excavation was looking to Glenn-Stewart for payment of the bill; and

f) she never indicated that Glenn-Stewart would be responsible for the bill because she had no specific knowledge of Excavation's and Feinman's arrangement with respect to the payhaulers.

17. Garner further testified that after this conversation with Mallory he asked Edward W. Storke ("Storke"), Excavation's Comptroller, to send a copy of the Feinman bill to Glenn-Stewart since he had no secretary at that time to do it himself. Garner thereafter suffered a disabling heart attack and did not resume his duties at Excavation until the following year.

18. Storke testified that Garner requested him in late July 1972 to send a copy of the Feinman bill to Glenn-Stewart. Storke put the request on his "to do" list. Storke testified that on August 15, 1972 he did get around to sending by regular mail a copy of the Feinman bill to Glenn-Stewart accompanied by the following cover letter:

19. Excavation received no response to its August 15 letter.

"August 15, 1972

Glenn, Stewart Pinckney Builders Developers, Inc.
3008 West Columbia Avenue
Philadelphia, Pa. 19121

Re: DACW-61-72-C-0235
Reedy Point Bridge
Delaware City, Delaware

Dear Sir:

This letter is to serve as notice that Excavation Construction, Inc. has not been paid by Alex Fineman, Inc. for two (2) International 140 Off Highway trucks. The outstanding rental bill due is $16,112.00. A copy of the bill is attached for your reference.

Sincerely,

EXCAVATION CONSTRUCTION, INC.

Edward W. Storke
Comptroller
EWS/rt
Attachment: (1)"
(Plaintiff's Exhibit 6).

20. Storke admitted that his intent in sending the August 15 letter was not to get Glenn-Stewart to pay the bill but rather to request their assistance in getting Feinman to pay.

21. Storke further testified that upon receiving no response from Glenn-Stewart to the August 15 letter he "frantically" wrote and sent the following letter to Glenn-Stewart:

"November 14, 1972

Glenn, Stewart, Pinckney Builders Developers, Inc.
3008 West Columbia Avenue
Philadelphia, Pa. 19121

Re: DACW–61–72–C–0235
Reedy Point Bridge
Delaware City, Delaware
Amount Due $16,112.00

Dear Sir:

Since Excavation Construction, Inc. has never been paid by Alex Fineman, Inc. for the rental on two International 140 trucks, this letter will serve as notice that we intend to take legal action to protect our interest.

Today I have written to the Corps of Engineers in Philadelphia requesting a certified copy of the payment bond for the above job. When I receive that copy, it will be forwarded to our attorney, Weinberg and Green, along with a copy of our letter written in August advising your firm of the outstanding amount due. This bill is long overdue and should have been paid months ago.

Upon receipt of the payment bond, our attorney, Mr. H. Pittman, is being directed to file a suit against your construction company and the bonding company.

Sincerely,

EXCAVATION CONSTRUCTION, INC.

Edward W. Storke
Comptroller

EWS/rt"
(Plaintiff's Exhibit 7).

—————•—————

22. Mallory testified that she, George E. Stewart ("Stewart", Secretary-Treasurer of defendant Glenn-Stewart), and a secretary were the only persons who handled the mail at Glenn-Stewart's offices at 3008 West Columbia Avenue, Philadelphia.

23. Mallory testified that she never received the August 15 letter from Excavation or any other written response to her request made in the telephone conversation with Garner until she received the November 14 letter from Storke.

24. Stewart testified that from June 1972 until receipt of the November 14 letter, he did not receive any written communication from Excavation and in particular he did not receive the August 15 letter.

25. No secretary was called to testify by any party.

26. After receipt of the November 14, 1972 letter, the following letter, dated November 28, 1972, was sent by Glenn-Stewart to defendant Wisconsin:

"Gentlemen:

Pursuant to Excavation Construction Company's letter to our firm dated November 14, 1972 (Enclosure No. 1), please be advised that this equipment was returned to Excavation Construction on July 27 and 28, 1972 (Enclosure No. 2). We and/or Wisconsin Surety are in no way responsible for this bill.

The Miller Act, which is statutory, clearly defines that a supplier must, in writing, inform the Prime Contractor and/or the Bonding Company of a claim within a ninety (90) day period after the last day the equipment was at the jobsite.

Be further advised that the supplier informed Glenn Stewart Pinckney, Inc. some 110 days after the equipment was removed thus eliminating our liability in its entirety.

Sincerely yours,

/s/ George E. Stewart

George E. Stewart
Secretary-Treasurer

Encl."
(Defendant's Exhibit 1).

———————◆———————

## CONCLUSIONS OF LAW

1. Jurisdiction and venue of this case exist by virtue of the Miller Act, 40 U. S.C. § 270b(b).

2. Excavation contends that the Miller Act, 40 U.S.C. § 270b(a),[14] provides Excavation with a right of action upon the defendant's payment bond upon giving timely notice to Glenn-Stewart of Excavation's claim against Feinman. Excavation argues that timely notice was given to Glenn-Stewart in one of two ways. First, Excavation urges the Court to accept as a fact that the August 15, 1972 letter was received by Glenn-Stewart. Second, Excavation urges that the July telephone conversation alone between Mallory and Garner provided sufficient notice and that a writing was unnecessary since it would not have served any additional purpose.

3. Excavation has failed to establish by a preponderance of the evidence that any written notice was timely given to defendant Glenn-Stewart as required by the Miller Act.

14. The Miller Act at 40 U.S.C. § 270b(a) provides that:
". . . any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving *written* notice to said contractor *within ninety days* from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by *registered* mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons." (Emphasis added).

Although the Act expressly provides that timely written notice shall be served by registered mail or other manner in which a United States Marshal is authorized by law to serve a summons, the Supreme Court held in Fleisher Co. v. United States, 311 U.S. 15, 18–19, 61 S.Ct. 81, 85 L.Ed. 12 (1940) that where a general contractor concedes the timely receipt of written notice and the sufficiency of its statements, the reason for a particular mode of service fails and thus written notice need not have been sent by registered mail in order to maintain an action under the Miller Act. The Supreme Court stated:

"The structure of the statute indicates the distinction. The proviso, which defines the condition precedent to suit, states that the material-man or laborer 'shall have a right of action upon the said payment bond upon giving written notice to said contractor' within ninety days from the date of final performance. The condition as thus expressed was fully met. Then the statute goes on to provide for the mode of service of the notice. 'Such notice shall be served by mailing the same by registered mail, postage prepaid', or 'in any manner' in which the United States marshal 'is authorized by law to serve summons'. We think that the purpose of this provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the *required written notice* within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. Rather, we think that Congress intended to provide a method which would afford sufficient proof of service when receipt of the *required written notice* was not shown." 311 U.S. at 18–19, 61 S.Ct. at 83 (Emphasis added).

■ *Fleisher*, on its facts, is limited to cases where receipt of timely written notice is conceded or at least unchallenged by the general contractor. The purpose of the provisions relating to the manner of service was not to establish a condition precedent to maintaining a Miller Act suit but was simply to provide modes of service which would afford sufficient proof of service when receipt of required written notice could not otherwise be shown. Thus, by providing two statutory methods of service, Congress was attempting to avoid unnecessary disputes relating to the receipt of notice when either one of those two methods were followed.

Lower courts have extended this rationale to provide that a use plaintiff may prove receipt of written notice in the same manner as any other fact so long as the plaintiff sustains his burden of proof by a preponderance of the evidence. United States v. R. P. McTeague Construction Corp., 264 F.Supp. 619, 620 (E.D.N.Y.1967).

■ In an effort to meet its burden, Excavation offered Storke's testimony that he mailed the August 15 letter personally. However, since the statute provides for proof of receipt of notice by evidence of mailing by registered mail, evidence of mailing by ordinary mail cannot be here held to give rise to a presumption of receipt. It should only be regarded as one piece of evidence for the trier of the facts to consider in reaching his conclusion as to whether or not the August 15 letter was actually received by Glenn-Stewart. See National State Bank of Newark v. Terminal Const. Corp., 217 F.Supp. 341, 356 (D.N.J.1963) aff'd. 328 F.2d 315 (C.A.3, 1964). Indeed, Excavation has not pressed for the application of any such presumption.

At trial no direct evidence was presented to contradict the testimony of Mallory and Stewart that Excavation's August 15 letter was never received. Moreover, it does not appear particularly significant that Glenn-Stewart's November 28 letter to Wisconsin contained no mention of Excavation's reference in its November 14 letter to a previous August letter which had allegedly advised Glenn-

Stewart of Feinman's bill. Any inference arising from this omission is more likely attributable to oversight than an admission of receipt because Glenn-Stewart did expressly state in the November 28 letter that Excavation's notice of a claim came too late and the strong inference from this statement is that Glenn-Stewart never received an August letter. Thus, the Court concludes from the documentary evidence and the testimony of the witnesses that Excavation has failed to establish by a preponderance of the evidence that the August 15 letter was received by Glenn-Stewart.

■ Furthermore, the November 14 letter (PX 7) cannot be considered as satisfying the written notice requirement of the Miller Act because it was received after the statutory ninety day period. United States v. Federal Insurance Company, 452 F.2d 485, 487 (C.A.5, 1971) and United States v. H. S. Kaiser, Inc., 270 F.Supp. 215, 217 (E.D.Wis.1967). And since Excavation offered no other evidence of any written communications with the defendants within the ninety day period, Excavation has failed to establish that written notice was timely given to Glenn-Stewart which is a condition precedent to the right to maintain a Miller Act suit. Fleisher Co. v. United States, *supra*, 311 U.S. at 18, 61 S.Ct. 81.

■ 4. The telephone communication in July 1972 between Mallory and Garner also failed to satisfy the statutory written notice requirement of the Miller Act.

■ It is true that the Act is entitled to a liberal construction and application to give effect to the Congressional intent of protecting those whose labor and materials go into public projects. MacEvoy Co. v. United States, 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). However, "such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds." *MacEvoy Co.* at 107, 64 S.Ct. at 893. Accordingly, the Supreme Court has found that the Act provides a broad but not unlimited protection and one such limitation is that materialmen such as the use plaintiff here must give the "statutory notice" of their claim to bring suit on a payment bond. United States v. Carter, 353 U.S. 210, 217, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957). Thus, after *Fleisher* courts have continued to interpret the statutory requirement of *written notice* as a condition precedent to bringing suit in spite of a general policy of giving the Act a liberal construction.

For example, in United States v. Northwestern Engineering Co., 122 F.2d 600, 602 (C.A.8, 1941) the Court, after analyzing the above quoted language from Fleisher, concluded that is was unable to arrive at any other conclusion than that "the giving of a written notice must be held to be mandatory, as a strict condition precedent to the existence of any right of action upon the payment bond." In Bowden v. United States, 239 F.2d 572, 577 (C.A.9, 1956), *cert. den.* 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957) the court said that the "giving of the written notice specified by the statute is a condition precedent to the right of a supplier to sue on the payment bond." The Third Circuit Court of Appeals joins by holding that under 40 U.S.C. § 270b "a prerequisite to the right of the plaintiff to maintain this action was the service of written notice upon the defendant." United States v. Merritt-Chapman & Scott Corporation, 305 F.2d 121, 123 (C.A.3, 1962).[15]

The purpose for the statutory requirement that the notice be in writing is to prevent misunderstanding between the parties and to afford certain minimal evidence of communication between the parties. Coffee v. United States, 157 F.2d 968, 969 (C.A.5, 1946) and Apache Powder Company v. Ashton Co., 264 F.2d 417, 421 (C.A.9, 1959). Hence, the elimination of a requirement of any written form of notice in a case where the

---

15. Also see T. F. Scholes, Inc. v. United States, 295 F.2d 366, 369 (C.A.10, 1961); Liles Construction Company v. United States, 415 F.2d 889, 890 (C.A.5, 1969); United States v. York Electric Construction Co., 184 F.Supp. 520, 522 (D.N.D.1960).

receipt and content of notice is disputed would tend to emasculate the clear intent of the statute to avoid such disputes. See United States v. F. A. Baehner, Inc., 326 F.2d 556, 558 (C.A.2, 1964).

Excavation argues that Mallory's testimony provides undisputed evidence that sufficient timely notice was given and that a written notice supplementing Mallory's testimony became unnecessary. Even if the Court were able to disregard the persuasive list of cases cited above which hold that *written* notice is a strict condition precedent to bringing suit under the Act, the Court would nevertheless reject Excavation's argument. In this case written notice would confirm or deny Mallory's supposition that she was told the amount of the Feinman bill. Written notice would evidence the nature of the communication and shed light on the context in which any information about the claim was given. It would indicate whether or not Mallory was justified in her conclusion that the telephonic conversation was intended merely as an effort by Garner to solicit Glenn-Stewart's aid in Excavation's attempts to contact Feinman and could in no possible way be interpreted as notice to Glenn-Stewart of a materialman's and supplier's claim. Thus, even without meeting Excavation's argument that the notice need not indicate an intent by the use plaintiff to look to the defendant for payment, written notice serves a useful purpose. Of course, if articulation of such intent were found to be required, written notice would serve the additional purpose of supplying notice or lack of notice of such intent.

■ Finally, a number of courts have expressly rejected Excavation's argument that all the statute requires with respect to notice is that the general contractor have knowledge of the claim regardless of how that knowledge is acquired. In *Bowden, supra,* 239 F.2d at 577 the use plaintiff argued that since a letter from a subcontractor to a general contractor gave the general contractor all the information which it would have obtained if the use plaintiff had given the general

contractor the written notice required by statute. The court rejected this "knowledge of the general contractor" theory stating:

"no rule of liberality in construction can justify reading out of the statute the very condition which Congress laid down as prerequisite to the cause of action" at 577.

The Third Circuit also appears to have rejected the "knowledge of the general contractor" approach to the Act. In United States v. Massachusetts Bonding & Ins. Co., 272 F.2d 73, 75–76 (C.A.3, 1959) the court cited *Bowden* approvingly while rejecting a use plaintiff's argument that a letter sent by a subcontractor to a general contractor noticing the use plaintiff's claim was sufficient. The court stated that "the provisions of the Act require a minimum of attention and effort" by the use plaintiff. Thus, it is the use plaintiff's adherence to the statutory requirements of the Act and not the knowledge of the general contractor which triggers a right to maintain an action on the payment bond under the Miller Act.

True, there are a number of cases in which oral communications supplemented timely written notice, but in each of those cases there was a timely written notice in some form. United States v. Merritt-Chapman & Scott Corporation, 185 F.Supp. 587 (M.D.Pa.1960) aff'd 295 F.2d 186 (C.A.3, 1961) (oral demand by use plaintiff plus presentation of a written statement); United States v. Merle A. Patnode Co., 457 F.2d 116 (C.A.7, 1972) (written letter supplemented by oral communication and general knowledge of defendant); Coffee, *supra,* 152 F.2d 968 (exhibition of written statement plus oral discussion); Houston Fire & Casualty Insurance Co. v. United States, 217 F.2d 727 (C.A.5, 1954) (oral communication by use plaintiff plus written acknowledgment by general contractor); also see United States v. H. S. Kaiser, Inc., 270 F.Supp. 215 (E.D. Wis.1967) (exhibition of written invoices plus oral discussion held insufficient):

In light of the above discussion, the Court concludes that the telephonic communication in July 1972 between Mallory and Garner failed to satisfy the statutory written notice requirement of the Miller Act.

5. Excavation, therefore, has failed to establish by a preponderance of the evidence that it gave Glenn-Stewart timely written notice as required by 40 U.S.C. § 270b(a) in order to maintain an action under the Miller Act upon the defendants' payment bond.

6. Accordingly, judgment will be entered against the use plaintiff and for the defendants.

## JUDGMENT

For the foregoing reasons, it is ordered that judgment is hereby entered against the use plaintiff and for the defendants.