**UNITED STATES of America for the Use and Benefit of T.L. WALLACE CONSTRUCTION, INC., Plaintiff,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Defendant.**

Civ. A. No. W91–0014(B).

United States District Court, S.D. Mississippi, W.D.

April 20, 1992.

Luther S. Ott, Christopher Solop, Ott Purdy & Scott, Jackson, Miss., for plaintiff.

Mary Elizabeth Hall, David W. Mockbee, Phelps Dunbar, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Cross–Motion for Summary Judgment. The Court, having considered the Motions and responses, along with memoranda of authorities and attachments thereto, is of the opinion that Defendant's Motion is well taken and should be granted.

## I. FACTS AND PROCEDURAL HISTORY

This case arises under the Miller Act, 40 U.S.C. § 270a, *et seq.*, which requires contractors that construct, alter or repair public buildings or public works of the United States pursuant to a contract with the United States to secure performance bonds for the protection of the United States and payment bonds for the protection of persons supplying labor and material in the prosecution of the work provided for in the contract. 40 U.S.C. § 270a(a)(1) and (2). Plaintiff T.L. Wallace Construction, Inc. seeks payment for work performed pursuant to a subcontract with Lewis Miller Construction Co., Inc. ("Lewis Miller"), the prime contractor to a contract with the United States Army Corps of Engineers ("Corps of Engineers"). Defendant Fireman's Fund Insurance Company is surety on a payment bond obtained by Lewis Miller as required by 40 U.S.C. § 270a.

On October 8, 1987, Plaintiff entered into a subcontract with Lewis Miller to construct a drainage structure for the Rocky Bayou Area Levee, Item 1–B in Yazoo County, Mississippi, Contract No. DACW38–87–C–0011 ("the Project"). Lew-

is Miller was prime contractor on the Project under a contract entered into with the Corps of Engineers. On July 25, 1988, representatives of Lewis Miller and representatives of the Corps of Engineers inspected the subcontract work performed by Plaintiff. *See* Exhibit "A" to Defendant's Motion for Summary Judgment, Affidavit of Timothy Temple. On July 27, 1988, Timothy Temple, Vice–President of Construction for Lewis Miller, notified Plaintiff by letter of "final work" that needed to be completed on the drainage structure. *See* Exhibit "2" to Defendant's Exhibit "A," Affidavit of Timothy Temple. The "final work" included completion of a paved ditch; installation of concrete footing and stairs; installation of steel grates; formation and notification of a plan to take corrective action to realign motor anchor bolts and replace stem guide anchor bolts; and application of a "Class 'B'" finish to the concrete structure. *Id.* The letter also notified Plaintiff of the probable arrival date of new stem and guides. *Id.*

Plaintiff subsequently performed the work and submitted its last certified payroll record for the project for the period from September 11, 1988, to September 17, 1988. *See* Exhibit "3" to Defendant's Exhibit "A," Affidavit of Timothy Temple. The payroll record indicates that Plaintiff performed its last labor on September 15, 1988. *Id.* Plaintiff concedes that it "substantially completed" its work under the subcontract in September 1988. *See* Exhibit "K" to Plaintiff's Cross–Motion for Summary Judgment, Affidavit of Randy Adams. On October 5, 1988, the Corps of Engineers accepted the Project as "substantially complete." *See* Exhibit "4" to Defendant's Exhibit "A," Affidavit of Timothy Temple; Exhibit "D" to Plaintiff's Cross–Motion for Summary Judgment, October 11, 1988, Memorandum from Gordon O. Inman, Area Engineer for Corps of Engineers, and November 8, 1988, Letter from Robert P. Petersen, Major, Corps of Engineers, Contracting Officer.

On November 1, 1989, Joe Strawbridge, Operations Manager for Lewis Miller, notified Plaintiff that Plaintiff needed to complete two "punch list" items so that Lewis

Miller could "final" [sic] the project. *See* Exhibit "1" to Exhibit "B" to Defendant's Motion for Summary Judgment, Affidavit of Joe Strawbridge. Charles J. Gordon, Project Engineer for the Corps of Engineer, confirms by affidavit that the government required completion of punch list items prior to final acceptance of the Project. *See* Exhibit "E" to Plaintiff's Cross–Motion for Summary Judgment, Affidavit of Charles J. Gordon. The "punch list," which Strawbridge attached to his letter to Plaintiff, specified seventeen items to be completed by various parties. The two items for which Plaintiff was responsible read as follows:

1. North–East column approx. 4' below top deck cracked & needs repair.

\* \* \* \* \* \*

4. Repaint stem guides

*See* Exhibit "1" to Defendant's Exhibit "B;" Exhibit "A" to Plaintiff's Exhibit "E." On February 27, 1990, and March 16, 1990, Plaintiff worked on the Project to complete the punch list items. *See* Defendant's Exhibit "G" and Exhibit "K." Plaintiff did not invoice or charge Lewis Miller for the punch list work. *See* Defendant's Exhibit "B."

On October 3, 1990, Plaintiff's Vice–President/Controller, Donavon G. Inkster, wrote Lewis Miller demanding final payment under the subcontract. *See* Defendant's Exhibit "4." Plaintiff was to be paid $110,000 under the subcontract, but, according to its estimates, has been paid $82,350 in progress payments and its account has been charged $3,850 in contractor tax. *See* Plaintiff's Exhibit "C."

Plaintiff filed the present action against Defendant, as surety for Lewis Miller, on March 1, 1991, pursuant to the Miller Act, 40 U.S.C. § 270a *et seq.*, for $27,650.00 due and owing for labor and material provided by Plaintiff for the Project.[1]

The Court has jurisdiction pursuant to 28 U.S.C. § 1331, this being a case arising under the laws of the United States.

## II. ANALYSIS

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State University*, 871 F.2d 545, 549 (5th Cir. 1989); *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. However, the movant need not support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–2553. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

---

1. In its response to Defendant's Motion for Summary Judgment, Plaintiff states that it seeks $23,800 plus interest from Defendant.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper merely where the court believes it unlikely that the non-moving party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

■ The parties' respective Motions[2] present a single question to be decided by the Court: Does the one-year statute of limitations for bringing suit under the Miller Act, 40 U.S.C. § 270b, commence when a subcontractor completes remedial or corrective work that is unnecessary to the functioning or operation, as demonstrated by approval of a project as "substantially complete," of the overall project? The Court answers this question in the negative.

### A. The Miller Act One–Year Statute of Limitations

The Miller Act, 40 U.S.C. § 270a *et seq.,* allows persons furnishing labor or material in furtherance of a contract for the construction, alteration or repair of a public building of the United States to bring suit for the unpaid amount or balance due under the contract. 40 U.S.C. § 270b(a). Actions under the Miller Act must be brought in the name of the United States for the use of the person suing. 40 U.S.C. § 270b(b). Courts should "liberally construe" the Miller Act to effectuate Congressional intent to provide security to persons contributing labor and material to public works projects. *See United States for the use of T.M.S. Mechanical Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Texas,* 942 F.2d 946, 950, and n. 9 (5th Cir.1991), *quoting Standard Accident Ins. Co. v. United States ex rel. Powell,* 302 U.S. 442, 444, 58 S.Ct. 314, 315, 82 L.Ed. 350 (1938).

Actions under the Miller Act are governed by a one-year statute of limitations, which reads in pertinent part as follows:

[N]o such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him.

40 U.S.C. § 270b(b).

■ As a general rule, remedial or corrective work, or inspection of work already completed, does not fall within the meaning of "labor" and will not extend the one-year limitations period. *See, e.g., United States for the use of Magna Masonry, Inc. v. R.T. Woodfield, Inc.,* 709 F.2d 249, 250 (4th Cir.1983); *United States for the use of State Electric Supply Co. v. Hesselden Construction Co.,* 404 F.2d 774 (10th Cir. 1968); *United States ex rel. Austin v. Western Electric Co.,* 337 F.2d 568 (9th Cir.1964); *United States for the use of Mod–Form v. Barton & Barton Co.,* 769 F.Supp. 235, 238 (E.D.Mich.1991); *United States for the use of Billows Electric Supply Co. v. E.J.T. Construction Co., Inc.,* 517 F.Supp. 1178, 1181 (E.D.Pa.1981), *affirmed,* 688 F.2d 827 (3d Cir.1982). The rationale for this general rule finds its basis in the 1959 amendment to the Miller Act, which replaced the "date of final settlement" with "the date on which the last of the labor was performed or material was

---

**2.** Defendant has filed a Motion to Strike Plaintiff's Cross–Motion for Summary Judgment as untimely under Rule 8(*l*) of the Uniform Local Rules of the United States District Courts for the Northern and Southern Districts of Mississippi. Rule 8(*l*) provides in pertinent part as follows:

Any motion served beyond the motion deadline imposed in the Scheduling Order entered pursuant to Rule 6(d) ... may be denied solely because the motion is served untimely. Uniform Local Rule 8(*l*). The scheduling order in the present action listed November 31, 1991,

as the last day on which to file motions. Plaintiff filed its Cross–Motion for Summary Judgment, as part of its response to Defendant's Motion for Summary Judgment, on December 5, 1991.

The Court finds that Plaintiff's Cross–Motion is untimely and should not be considered. However, even if the Court were to consider Plaintiff's Cross–Motion, it would not be well taken and would not be granted for the reasons stated in this Memorandum Opinion and Order.

supplied" as the date on which the statute of limitations commences. *See* 1959 U.S.Code Cong. and Admin.News, at 1995–2000; *United States for the use of H.T. Sweeney & Son, Inc. v. E.J.T. Construction Co., Inc.*, 415 F.Supp. 1328, 1330–31 (D.Del.1976). The amendment was intended to provide "a simple, fixed and certain method" for determining the time period within which to file suit. 1959 U.S.Code Cong. & Admin.News, at 1996.

■ The Fifth Circuit has not expressly adopted the general rule which provides that remedial or corrective work does not extend the one-year limitations period. In two decisions, the Fifth Circuit has found that work that could be termed "corrective" constituted the "last labor performed" for limitations purposes. In *Trinity Universal Insurance Company v. Girdner*, 379 F.2d 317 (5th Cir.1967), the Fifth Circuit held that replacement of defective pipe insulation and replacement of a seal in an air conditioning unit came within the scope of the "last labor or materials" language used in the statute. *Id.* at 318. In *Johnson Service Co. v. Transamerica Insurance Co.*, 485 F.2d 164 (5th Cir.1973), the Fifth Circuit held that rewiring and recalibrating an air conditioning unit fell within the range of conduct sufficient to extend the limitations period. *Id.* at 174.

Both *Trinity Universal* and *Johnson Service*, however, involved repairs that were crucial to the operation of the project on which work was performed. In *Trinity Universal*, the court noted that the government "refused to approve the original work" without further work by the subcontractor. *Trinity Universal*, 379 F.2d at 318. In *Johnson Service*, the court noted that the temperature control equipment installed by the plaintiff subcontractor "would not have been a workable installation" without remedial alteration of mistakes. *Johnson Service*, 485 F.2d at 173–74. The court held that the plaintiff's remedial work extended the limitations period, because of

the unexpected nature of the work, the fact that it arose from faulty plans fur-

nished by others, and the importance of the changes for the entire system. *Id.* at 174.

The Court finds that *General Insurance Company of America v. United States for the use of Audley Moore & Son*, 409 F.2d 1326 (5th Cir.1969) (rehearing) best articulates the reasoning set forth in *Johnson Service*. In *General Insurance*, the plaintiff subcontractor relied on *Trinity Universal* for the principle that corrective work extends the time for filing suit under the Miller Act. The court rejected the plaintiff's argument, and specifically distinguished a situation in which the government refused to approve the work from a situation where work is performed subsequent to completion. *General Insurance*, 409 F.2d at 1327. The plaintiff also contended that any work performed in furtherance of a contract extends the limitations period for filing suit. The court rejected this argument as well. The court stated that a party need not discharge every legal duty under a contract for the limitations period to commence because "[l]abor furnished in the prosecution of the work is not co-terminus with the outer limits of all duties provided by the contract." *Id.* In other words, a party can perform corrective work under a contract without such action constituting "labor" for purposes of the Miller Act limitations period. *See also General Insurance Co. of America v. United States for the use of Audley Moore & Son*, 406 F.2d 442, 443–44 (5th Cir.1969) (original decision) (Court found that making final inspections and measurements was not "labor" and was merely "corrective work," which, the Court noted, had been held insufficient to extend the limitations period).

From these Fifth Circuit decisions, therefore, the Court concludes that "labor," for purposes of the Miller Act limitations period, does not include remedial or corrective work, even if performed as a contractual duty, if such remedial or corrective work was neither significant nor crucial to the operation or functioning of the project.

In the present action, the Court finds that Plaintiff's punch list work did not ex-

tend the one-year statute of limitations period. As a preliminary matter, Plaintiff's punch list work can clearly be termed "remedial" or "corrective" because the work involved fixing items previously worked on by Plaintiff. Moreover, Plaintiff's remedial work was neither significant nor crucial to the operation or functioning of the Project, when viewed from the perspective of the government and as demonstrated by Plaintiff's own actions. First, the government approved the Project as "substantially complete," even though the Project was not "finally accepted." In recommending that the Project be deemed "substantially complete," Gordon O. Inman, Area Engineer for the Corps of Engineers, noted that the structure was "operational" with "minor deficiencies" at the drainage structure, for which Plaintiff remained responsible. *See* Plaintiff's Exhibit "D," October 11, 1988, Memorandum from Gordon O. Inman. Major Robert P. Petersen, Contracting Officer of the Corps of Engineers, subsequently found the work to be "substantially complete" and noted that the remaining work was "of a minor nature" and would "not prohibit the project from serving its intended purpose." *Id.*, November 8, 1988, Letter from Robert P. Petersen. The Project was clearly operational irrespective of Plaintiff's remaining work. From the perspective of the government, therefore, Plaintiff's performance of the punch list work after substantial completion was not integral to the Project.

In addition, Plaintiff's own words and actions demonstrate that its punch list work should not extend the one-year limitations period. In a letter to Lewis Miller dated October 3, 1990, Plaintiff's Vice-President/Controller, Donavon G. Inkster, demanded payment for work performed on the Project. Inkster, on behalf of Plaintiff, stated that "our work on the Yazoo County job [the Project] has been completed for almost two years." *See* Exhibit "4" to Defendant's Exhibit "B." The date referred to in the letter was the date of substantial completion of the Project.

In another letter, dated February 6, 1990, Plaintiff's Executive Vice-President, Billy M. Massengale, characterized the punch list work pertaining to the concrete column as "a maintenance problem that could go on indefinitely." *See* Exhibit "2" to Defendant's Exhibit "B." Plaintiff, in other words, viewed the punch list work as work largely unrelated to the operation of the Project and, as demonstrated by Massengale's letter, as work potentially incapable of termination.

The Court, therefore, finds that Plaintiff's punch list work, which involved repainting stem guides and repairing a cracked column, was remedial and, moreover, was not so crucial to the operation of the Project as to constitute "labor" within the meaning of the Miller Act statute of limitations as interpreted by the Fifth Circuit. Accordingly, the Court finds that Plaintiff performed its "last labor" on or about September 15, 1988, and that Plaintiff's action filed on March 1, 1991 is untimely.

■ Although Plaintiff did not argue for an equitable extension of the statute of limitations, the Court notes, as an aside, that a party may be estopped from relying on the one-year statute of limitations if sufficient equitable considerations exist to warrant estoppel. *See United States for the use of Texas Bitulithic Company v. Fidelity & Deposit Co.*, 813 F.2d 697, 700 (5th Cir.1987). Estoppel is allowed because the Fifth Circuit has characterized the Miller Act one-year period as limitational, and not jurisdictional. *Id. Accord, United States for the use of American Bank v. C.I.T. Construction, Inc.*, 944 F.2d 253, 257 (5th Cir.1991); *United States for the use of Bernard Lumber Co. v. Lanier-Gervais, Inc.*, 896 F.2d 162, 164 (5th Cir. 1990). Nothing in the present action, however, would warrant equitable tolling of the one-year statute of limitations.

In sum, the Court finds that Defendant's Motion for Summary Judgment is well taken and should be granted because Plaintiff's action is barred by the one-year statute of limitations governing claims under the Miller Act, 40 U.S.C. § 270a *et seq.*

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is well taken and should be granted.

A separate judgment will be entered finally dismissing Defendant with its costs.

SO ORDERED.