**The UNITED STATES of America for the Use and Benefit of LUIS A. CABRERA, S.E., A Special Partnership, Plaintiff,**

**v.**

**SUN ENGINEERING ENTERPRISES, INC.; CNA Casualty of Puerto Rico, Defendants.**

**The UNITED STATES of America for the Use and Benefit of Efigenio Curet SANTIAGO d/b/a Curet Tech Services, Plaintiff,**

**v.**

**SUN ENGINEERING ENTERPRISES, INC.; CNA Casualty of Puerto Rico, Defendants.**

**Civ. Nos. 91–2297 (JAF), 92–1710 (JAF).**

United States District Court, D. Puerto Rico.

March 31, 1993.

Eduardo Castillo–Blanco, San Juan, P.R., for plaintiff Cabrera.

Juan R. Lugo–Lebrón, San Juan, P.R., for plaintiff Curet.

Federico Lora–López, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Two independent subcontractors brought separate suits against a common contractor and its surety pursuant to federal legislation that provides a remedial cause of action for contract disputes involving federal building projects. Both subcontractors allege that the contractor and its surety are jointly and severally liable for the full compensation agreed to under the respective subcontracts, in addition to interest on the unpaid subcontracts, attorneys' fees, and court costs. The contractor avers that the money damages prayed for under the subcontracts are excessive given the subcontractors' performances, or in the alternative, that the special federal law under which the subcontractors brought the suit bars these plaintiffs a federal remedy on statute of limitations grounds. Since similar issues are involved, as well as the existence of common defendants, the two suits have been consolidated before this court. The contractor and surety have moved for summary judgment against one of the two subcontractors, claiming that the subcontractor's suit does not meet the time requirements of the federal statute. The summary judgment motion is *denied*.

### I.

### *Background*

On March 23, 1990, Efigenio Curet Santiago, doing business as Curet Tech Services ("Curet"), entered into a subcontract with Sun Engineering Enterprises, Inc. ("Sun Engineering"), the contractor for federal project number 089984–89–B–0163 to renovate the lobby and offices of the United States General Post Office of San Juan, Puerto Rico.[1] Curet, a Puerto Rico entity, agreed to perform the installation of certain air-conditioning systems at the post office for Sun Engineering, also a Puerto Rico concern. The original amount of Curet's subcontract was $56,000. Curet argues that an additional $1,609.57 is owed because of extra work completed at the request of contractor Sun Engineering. CNA Casualty of Puerto Rico ("CNA") was the surety under the subcontract and furnished the United States with a performance and payment bond under number 3139917 of the contract.

Curet began its air-conditioning work and completed the contract between December 1990 and June 1991. The exact date is in dispute. Mr. Curet–Santiago, the owner of Curet, stated that the subcontract was completed in December of 1990. (Civil No. 91–2297, Docket Document No. 18, *Motion for Summary Judgment*, Exhibit A, *Deposition of Curet–Santiago*, at 3–4, 13). On February 11, 1991, Curet claims to have sent defendants an invoice for the unpaid portion of the subcontract. When Curet received no payments, a second letter dated March 12, 1992, was allegedly sent to Sun Engineering's client, the United States, seeking assistance in forcing Sun Engineering to pay Curet the unpaid balance of the subcontract price. On February 27, 1991, according to the record, an architect had already inspected Curet's work product and found several "deficiencies". (Civil No. 91–2297, Docket Document No. 19, *Motion Opposing Summary Judgment*, Exhibit B, *Letter to Sun Engineering's President, Francisco Jiménez, from Architect Ismael Elías Cortés, of 8/7/1991*, at 1–2). Curet was allegedly unaware of any "deficiencies" until May 6, 1991, at which point Curet was notified of the actions necessary to correct various "deficiencies" in order to sat-

---

1. The other plaintiff subcontractor is Luis A. Cabrera, S.E., a Special Partnership ("Cabrera"). Defendant contractor has not moved for summary judgment against Cabrera; therefore, Curet is the only subcontractor relevant to the disposition of this motion.

isfy the United States and Sun Engineering.[2] Curet performed the requested tasks. In a sworn statement, Sun Engineering's President, Francisco Jiménez ("Jiménez"), indicated that he was assured that the entire project was completed by May 17, 1991. (Civil No. 91–2297, Docket Document No. 18, *Motion for Summary Judgment*, Exhibit C, *Sworn Declaration of Jiménez*, at 1). The inspector, Architect Cortés, acknowledged his approval of Curet's performance in a letter to Jiménez dated June 12, 1991. (Civil No. 91–2297, Docket Document No. 18, *Motion for Summary Judgment*, Exhibit D, *Letter from Architect Cortés to Jiménez of 6/12/1991*, at 1).

On May 27, 1992, Curet filed suit with the Clerk of the United States District Court for the District of Puerto Rico pursuant to the Miller Act, 40 U.S.C. §§ 270a *et seq.*, seeking the unpaid balance of the air-conditioning subcontract from Sun Engineering and CNA.[3] (Civil No. 92–1710, Docket Document No. 1, *Complaint*). Curet argues that Sun Engineering's alleged breach of contract has cost Curet at least $17,965.57.

On July 7, 1992, following a motion by plaintiffs, Curet's claim and that of the other subcontractor were consolidated by order of the court. (Civil No. 92–1710, Docket Document No. 7, *Motion for Consolidation*). On August 10, 1992, Defendants Sun Engineering and CNA moved for summary judgment against Plaintiff Curet, arguing that plaintiff's Miller Act claim is barred by the one-year statute of limitations set forth in the statute. 40 U.S.C. § 270b. (Civil No. 91–2297, Docket Document No. 18, *Motion for Summary Judgment*).

## II.

### *Standard for Summary Judgment*

■ Federal Rule of Civil Procedure 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue* as to any *material fact* and that the moving party is entitled to a *judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added). Therefore, in deciding a summary judgment motion, there are essentially three inquiries to pursue: the materiality and genuineness of any factual dispute, and the entitlement to judgment as a matter of law. *Id.; Román Figueroa v. Torres Molina*, 754 F.Supp. 239, 240–41 (D.P.R.1990).

" '[G]enuine' means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *United States v. One Parcel of Real Property with Bldgs.*, 960 F.2d 200, 204 (1st Cir.1992) (citation omitted). A "material" fact describes one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 78 (1st Cir.1992).

■ Summary judgment may be granted even if there is a factual dispute so long as the fact at issue is *immaterial* to the legal disposition of the case. Moreover, summary judgment may be granted even if an allegedly disputed fact is material as long as there is no *genuine* dispute about the fact. *U.S. Fire*

---

**2.** The list of "deficiencies" as described in the architect's correspondence to Curet is as follows:
"Install A/C grille [sic] above security entrance." First Floor. Box Lobby.
"Adjust loose A/C diffusser [sic]." Medical Unit ("M.U."), Room 11, Waiting.
"Install A/C return and A/C diffusser [sic]." M.U., Rooms 51–53.
"All A/C returns do not comply with drawing." M.U. Rooms 54–56a.
"All A/C returns do not comply with drawing." M.U. Room 56b.
"All A/C returns do not comply with drawing." M.U. Room 57–58.

"Reinstall diffusser [sic] at ceiling (above suspended ceiling)." Second Floor, Room 30.
"Anchor A/C units." Second Floor, Room 29.
"Adjust ceiling diffusser [sic]." Women's Serving Room.
(Civil No. 91–2297, Docket Document No. 19, *Motion Opposing Summary Judgment*, Exhibit B, *Letter to Jiménez from Architect Cortés, of 8/7/1991*, at 1–2).

**3.** Federal jurisdiction is predicated on 40 U.S.C. §§ 270a and 270b.

*Ins. Co. v. Producciones Padosa, Inc.,* 835 F.2d 950, 953 (1st Cir.1987).

In all of the court's considerations in deciding a summary judgment motion, the court must consider the record in the light most favorable to the non-moving party. *Bank One Texas, N.A. v. A.J. Warehouse, Inc.,* 968 F.2d 94, 97 (1st Cir.1992).

## III.

### *The Miller Act and the Act's Statute of Limitations*

"The Miller Act, 40 U.S.C. § 270b,[4] provides a *federal* cause of action for persons supplying labor and materials upon a payment bond secured by the principal contractor of a federal government project."[5] *United States use of John D. Ahern Co. v. J.F. White Contracting Co.,* 649 F.2d 29, 31 (1st Cir.1981) (emphasis added). Section 270b declares that:

> Every person who has furnished labor or material in the prosecution of the work provided for in [a contract for the construction, alteration, or repair of any public building of the United States], ... shall have the right to sue on [the required] payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit.... Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed ... irrespective of the amount in controversy in such suit, but no [Miller Act] suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied.... The United States shall not be liable for the payment of any costs or expenses of any such suit.

40 U.S.C. § 270b. *See also* 40 U.S.C. § 270a (defining relevant contracts and describing bond requirements for such contracts).

Federal courts have struggled to ascertain the precise date for running the Miller Act's one-year statute of limitations; according to the language of the statute, it is "the day on which the last of the labor was performed or material was supplied...." 40 U.S.C. § 270b(b). The Miller Act's original statute of limitations running mechanism was the "date of final settlement." *See* 1959 U.S.Code Cong. & Admin.News, at 1995–2000. Apparently, Congress amended the Miller Act in 1959 to adopt the performance-and-supply language to "provide 'a simple, fixed and certain method' for determining the time period within which to file suit." *United States use of T.L. Wallace Constr., Inc. v. Fireman's Fund Ins. Co.,* 790 F.Supp. 680, 684 (S.D.Miss.1992) (quoting 1959 U.S.Code Cong. & Admin.News, at 1996). Despite this legislative clarification, the 1959 amendment has not entirely ended the juris-

---

**4.** "The Miller Act of 1935 derived from the Heard Act of 1894, ch. 280, 28 Stat. 278 (as amended by Act of Feb. 24, 1905, 33 Stat. 811)." *Chicago Rigging Co. v. Uniroyal Chemical Co.,* 718 F.Supp. 696, 698 (N.D.Ill.1989).

**5.** The *federal* cause of action provided for in the Miller Act was not intended to be the sole remedy available to subcontractors like Curet. In fact, state fora are the usual contract-dispute tribunals.

> "The operation of the Miller Act and various authorities support the conclusion that the Miller Act does not totally occupy the field. For example, a Miller Act suit on the surety bond is not a subcontractor's exclusive remedy. *See United States [use of] Sunworks Div. of Sun Collector Corp. v. Insurance Co. of North America,* 695 F.2d 455 (10th Cir.1982) (allowing subcontractor to sue bonded general contractor for quantum meruit recovery); *United States [use of] Mobile Premix Concrete, Inc. v. Santa Fe Engineers, Inc.,* 515 F.Supp. 512 (D.Colo.1981) (holding that subcontractor could recover damages from general contractor for delay in performance under state law).... Neither the alleged comprehensiveness of the regulatory scheme, nor the regulations, evidence a congressional intent to occupy the area regulated by the California statute [relevant in this case]."
> *Alvarez v. Insurance Co. of North America,* 667 F.Supp. 689, 695 (N.D.Cal.1987). *See also, McDaniel v. University of Chicago,* 548 F.2d 689, 695 (7th Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978) ("an action for breach of an employment contract is traditionally a state court action"); *Faerber Electric Co. v. Atlanta Tri–Com, Inc.,* 795 F.Supp. 240, 243 (N.D.Ill.1992) (referring to *F.D. Rich Co. v. United States use of Industrial Lumber Co.,* 417 U.S. 116, 122, 94 S.Ct. 2157, 2161–62, 40 L.Ed.2d 703 (1974)).

prudential debate regarding the timing of tolling: Does the contractual project need to be "completely finished" in order to begin the running of the statute, or can a "substantially completed" project start the statute's run? If a project is deemed complete by a subcontractor, but an inspection reveals flaws, mistakes, or even omissions under the terms of the original subcontract, does subsequent use of labor, or provision of materials, reset the one-year alarm clock?

The First Circuit has not spoken squarely on the requirements for the running of the Miller Act's one-year statute of limitations. We, therefore, follow the First Circuit's limited guidance on this issue and also look to the approaches taken by other circuits on this timing question. As a general proposition, there appear to be two distinct methodologies among the circuits for determining the date when the Miller Act's statute of limitations begins to run: (1) upon substantial completion of the terms of a subcontract, and (2) upon total performance of a subcontract. We should note that under the aegis of either method, "repairs and corrections" of subcontract provisions do not normally toll the statute.

### A. The Majority Rule: Subcontract Provision v. Correction or Repair

In 1964, the Ninth Circuit adopted a bifurcated view for determining when work performed by a subcontractor in a federal building project—a classic Miller Act factual scenario—tolls the statute of limitations, and when such work is extraneous to the running of the statute. *United States use of Austin v. Western Electric Co.*, 337 F.2d 568, 572–73 (9th Cir.1964). The Ninth Circuit's inquiry in *Western Electric Co.* examined the nature of the usage of labor and provision of supplies to divine within which of two categories the work fell: an uncompleted requirement of the original subcontract, or a correction or repair of an already performed subcontract provision. *Id.* The Ninth Circuit concluded that a correction or repair would not toll the statute, but the furnishing of labor or provisions to complete a requirement of the subcontract would reset the clock. *Id.*

A majority of the circuits have followed the Ninth Circuit's lead. The Sixth Circuit recently decided that the crucial inquiry in a Miller Act's statute-of-limitations case is whether the work at issue is a "correction or repair" or "something required by the original contract." *Mod–Form, Inc. v. Barton & Barton Co.*, No. 90–CV–71387–DT, 1992 WL 132832, at *1, 1992 U.S.App. LEXIS 14321, at *3 (6th Cir. June 15, 1992). The Fourth Circuit has also followed the Ninth Circuit's lead in utilizing the correction-or-repair versus original-contract test. *See United States use of Magna Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249, 251 (4th Cir.1983); *see also United States use of Noland Co. v. Andrews*, 406 F.2d 790, 792 (4th Cir.1969) (applying the same standard to the Miller Act's 90–day notice provision for subcontractors of subcontractors of the primary contractor). And the same binary inquiry became the rule of the Tenth Circuit with its holding in *United States use of State Electric Supply Co. v. Hesselden Construction Co.*, 404 F.2d 774, 776 (10th Cir.1968). *See also Bailey v. Faux*, 704 F.Supp. 1051, 1053 (D.Utah 1989).

Although the District of Columbia Circuit, the Second Circuit, and the Third Circuit have not opined about the Ninth Circuit's tolling test, district courts within those circuits have followed the majority rule. *See United States use of Lank Woodwork Co. v. CSH Contractors, Inc.*, 452 F.Supp. 922 (D.D.C.1978); *cf. United States use of Greenwald–Supon, Inc. v. Gramercy Contractors, Inc.*, 433 F.Supp. 156, 162 (S.D.N.Y.1977) (addressing 90–day statute-of-limitations period for subcontractors' subcontractors under the Miller Act); *see also United States use of Air Stream Products Co. v. Essential Construction Co.*, 363 F.Supp. 681, 682 (S.D.N.Y. 1973) ("[T]he crucial question is not whether the final shipment is large or inconsequential, but rather whether it is made pursuant to an 'over-all contract.' ") (referring to Judge Friendly's view in a related case as expressed in *J.A. Edwards & Co. v. Peter Reiss Constr. Co.*, 273 F.2d 880 (2d Cir.1959), *cert. denied*, 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960)); *United States use of T Square Equipment Corp. v. Gregor J. Schaefer Sons, Inc.*, 272 F.Supp. 962, 963–64 (E.D.N.Y.1967);

*United States use of H.T. Sweeney & Son, Inc. v. E.J.T. Constr. Co.,* 415 F.Supp. 1328, 1332 (D.Del.1976).

The Eighth Circuit's approach is substantially the same as the majority rule. The Eighth Circuit describes the beginning of the statute's running as the time when a valid contractual claim could be lodged against the subcontractee. *See United States use of General Electric Co. v. Gunnar I. Johnson & Son, Inc.,* 310 F.2d 899, 903 (8th Cir.1962). In other words, when the original subcontract has been performed—even if there may be subsequent remedial or corrective measures taken—the statute begins to run.

## B. *The Minority Tolling Test: Substantial Completion*

The Fifth and Eleventh Circuit's standard for tolling of the one-year statute of limitations in Miller Act cases varies from the majority view. The decisions of the Fifth Circuit have scratched the outline of a rule of "substantial completion" in which the statute of limitations would *not* be extended by *insignificant* work *even if* such work were required under the terms of the subcontract. One should not confuse substantial completion with needed corrections or repairs: the minority view coincides with the majority view that remedial work does not toll the statute; however, the minority view allows the statute to run when "insubstantial" subcontract requirements have not yet been completed.[6] *See Trinity Universal Ins. Co. v. Girdner,* 379 F.2d 317 (5th Cir.1967); *General Ins. Co. v. United States,* 406 F.2d 442, 443–44 (5th Cir.), *reh'g denied,* 409 F.2d 1326, *cert. denied sub nom., United States use of Audley Moore & Son v. General Ins. Co.,* 396 U.S. 902, 90 S.Ct. 214, 24 L.Ed.2d 178 (1969); *Johnson Service Co. v. Transamerica Ins. Co.,* 485 F.2d 164 (5th Cir.1973); *see also United States use of T.L. Wallace*

*Constr., Inc. v. Fireman's Fund Ins. Co.,* 790 F.Supp. 680, 684–85 (S.D.Miss.1992).

The Eleventh Circuit has followed its ancestral circuit [7] in beginning the Miller Act's statute-of-limitations countdown when a subcontract becomes workable or substantially complete, rather than when fully performed as in the majority of circuits. *See Southern Steel Co. v. United Pacific Insurance Co.,* 935 F.2d 1201, 1205 (11th Cir.1991) (citing *Johnson Serv. Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 173 (5th Cir.1973)).

## C. *The Rule of the First Circuit*

Returning to our starting point, the case at hand, the First Circuit has not expressly adopted either the majority or minority rule for determining the date to start the year-long clock for Miller Act purposes. The First Circuit's only expression of opinion on the Miller Act's statute-of-limitations provisions did not involve an analysis of the *one-year statute* at issue here. *United States use of John D. Ahern Co. v. J.F. White Contracting Co.,* 649 F.2d 29 (1st Cir.1981). In *White Contracting Co.,* the First Circuit did, however, address an *arguably* analogous part of the same law regarding a *90–day notice period* for Miller Act bond claims of subcontractors' subcontractors who have no direct relationship with the prime contractor. *See* 40 U.S.C. § 270b(a).

Relying primarily on an earlier decision, *Cooley v. Barten & Wood, Inc.,* 249 F.2d 912 (1st Cir.1957), the First Circuit in *White Contracting Co.* upheld the district court's espousal of a contractor-favorable test to determine the date of the commencement of the notice period: the last day the indirect or secondary subcontractor literally provided work. This standard was affirmed despite the fact that the subcontractor was asked *by the contractor and direct subcontractor* to delay the full performance of the subcontract pending completion of collateral matters.

---

6. Commensurate with the majority rule, both the Fifth and Eleventh Circuits consider "that, as a general rule, repairs do not toll the notice period in Miller Act cases." *Southern Steel Co. v. United Pacific Ins. Co.,* 935 F.2d at 1204. *See also General Ins. Co. v. United States,* 406 F.2d at 443–44.

7. *See Bakery, Confectionery & Tobacco Workers Local 362–T, AFL–CIO–CLC v. Brown & Williamson Tobacco Corp.,* 971 F.2d 652, 655 (11th Cir. 1992) (citing *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the case in which the Eleventh Circuit formally adopted the case law of its former circuit, the previous Fifth Circuit).

After being asked to delay performance, the secondary subcontractor was terminated through an amendment of the secondary subcontract occasioned by the contractor and direct contractor at a time *later* than 90 days—actually 150 days—from the last day of work. *Id.* at 32. The court found that the 90–day notice period of the Miller Act precluded suit by the secondary subcontractor. *Id.* This result arguably runs counter to equitable considerations but, according to the court, the protection of the prime contractor who has *no contractual relationship* with secondary subcontractors requires "[s]trict enforcement of the ninety-day notice period [ ] to give effect to 'the intent of Congress to fix a time limit after which the prime contractor could make payment to the subcontractor [with which the contractor had a contractual agreement] with the certainty that he would not thereafter be faced by claims of those who had supplied labor and materials to the subcontractor.' " *Id.* (quoting *Cooley v. Barten & Wood, Inc.*, 249 F.2d at 915, which quotes *Bowden v. United States*, 239 F.2d 572, 577–78 (9th Cir.1956), *cert. denied sub nom. United States use of Malloy v. Bowden*, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957)).

However, while the reasoning behind the contractor-favorable nature of the standard may make sense in the case of subcontractors' subcontractors, the same logic does not extend to the context of the Miller Act's one-year statute of limitations. The one-year statute applies to primary contractors' *direct* relationships with subcontractors. Where subcontractors have a direct contractual link to the prime contractor, the justification for heightened concern for contractors in interpreting a notice requirement is eviscerated. A direct contractual link between the contractor and subcontractor provides the requisite security that the subcontract will have

been satisfied upon acceptance of the work and payment to the subcontractor.

On a close analysis, however, *White Contracting Co.* may hint at the First Circuit's view as to the one-year statute issue present in the instant case. *White Contracting Co.* supports the proposition that the secondary subcontract, after amendment, deemed the secondary subcontract satisfied by retrospective definition with no additional performance needed. Thus, if any interpretation of *White Contracting Co.* applies to our inquiry in this case, it is that the statute absolutely runs when the contract is fully performed—even if performance is "defined" retrospectively. Such a notion has obvious equitable drawbacks which we need not address here, but the full performance principle is supported—however weakly—by this First Circuit decision.[8] And yet, we emphasize that the 90–day notice period scenario in *White Contracting Co.* and the one-year statute-of-limitations period in the instant case are qualitatively distinct, given the dissimilar set of relationships among the contracting parties. Indeed, we have to perform quite an elaborate rain dance under the *White Contracting Co.* opinion to precipitate even a cognizable mist in answering the instant question.

Since the First Circuit has not decided the issue crucial to the present case, we dart an interested eye toward district court opinions within the realm of the First Circuit that have struggled with the horns of our particular bull. We have found only a single such matador within this circuit. In *United States use of Laboratory Furniture Co. v. Reliance Ins. Co.*, 274 F.Supp. 377 (D.Mass.1967), Judge Garrity indicated that the court substantially agreed with what we have here described as the majority view of the circuits. In a case involving the one-year statute of limitations of 40 U.S.C. § 270b(b), the court

---

8. The First Circuit did express the general view that notice requirements are easily satisfied and are not overly burdensome to the subcontractors of subcontractors seeking to be made whole through the apparatus of the Miller Act. As the *Cooley* court observed, "[a] brief letter from the supplier to the prime contractor will make certain and unambiguous the rights and liabilities of all concerned—the supplier, the prime contractor, and the surety. We do not believe that

Congress intended to have it held that such little expenditure of effort is too much diligence to require of a supplier in order that he may secure his right of action on the payment bond." *United States use of John D. Ahern Co. v. J.F. White Contracting Co.*, 649 F.2d 29, 32 (1st Cir.1981) (quoting *Bowden v. United States*, 239 F.2d 572, 577–78 (9th Cir.1956), *cert. denied sub nom. United States use of Malloy v. Bowden*, 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909 (1957)).

issued two relevant conclusions: First, the subcontractor's actions that arguably reset the clock may have been "minor and inexpensive items" but that such an inquiry was "not important" to the tolling determination. *Reliance Ins. Co.*, 274 F.Supp. at 379. Thus, the court expressly discards the minority view of the circuits in throwing aside the viability of "substantial completion" as the important question. Second, the court overtly recognized the Ninth Circuit's test in *United States use of Austin v. Western Electric Co.*, 337 F.2d 568, 572–75 (9th Cir.1964), of "whether the materials were supplied for the purpose of completing the subcontract as distinguished from correcting defects and making repairs following an inspection." *Reliance Ins. Co.*, 274 F.Supp. at 379.

Therefore, after a thorough examination of federal case law regarding the Miller Act's one-year statute of limitations, we join the District of Massachusetts and the majority of circuits in adopting the rule first described in *Western Electric Co.*, 337 F.2d at 572–73. This legal perspective has one particularly important ramification pertinent to the instant case: The date on which the statute begins to run is the date of *full performance* of the subcontract. In other words, substantial compliance is insufficient to start the statute's running, and an inspection following apparent completion of a subcontract that reveals contractual omissions in need of, and followed by, performance by the relevant subcontractor *will toll the statute.* Of course, corrections or repairs do not affect the tolling or running of the statute.

## IV.

*Issues Underlying a Disposition of the Instant Controversy*

The specific question presented to this court is whether summary judgment should be granted in favor of the prime contractor, Sun Engineering, and its surety, CNA, and against the subcontractor, Curet, on the ground that Curet's Miller Act suit is barred by the Act's one-year statute of limitations. Since this issue dances on the coat tails of a summary judgment motion, and uncertainty remains as to the date of full

performance of the subcontract, we must deny summary judgment and allow the case to continue to trial.

### A. *Factual Dispute Centering on the Performance Date*

The record of this case is convoluted; therefore, we must extract the important facts, and disputes of fact, in order to apply the law accurately and fairly. First, we must determine the day of Curet's full performance because a legitimate suit under the Miller Act needs to be filed within a year of such date. Second, we have to take note of the date of the filing of Curet's suit. Working backward, and from the easy inquiry to the more difficult, we conclude that the record demonstrates beyond doubt that Curet's federal suit was commenced on May 27, 1992. Thus, the vital and dispositive inquiry is whether the performance date of Curet's subcontract was on or before May 27, *1991,* and hence the suit a valid one under the Miller Act. *See* 40 U.S.C. § 270b(b).

The parties to this case, as personified by their written submissions, have not been entirely helpful in our quest to pinpoint the performance date. Sun Engineering and CNA argue that completion of the subcontract, and the running of the statute, occurred in December 1990, or in the alternative, on or before May 17, 1991. Under either theory, Curet's May 27, 1992, suit would be barred by the Miller Act's statute of limitations.

Sun Engineering bases the December 1990, date on Mr. Curet–Santiago's admission in a deposition that the air-conditioning subcontract was finished in mid-December 1990. (Civil No. 91–2297, Docket Document No. 18, *Motion for Summary Judgment,* Exhibit A, *Deposition of Curet–Santiago,* at 3–4, 13). Sun Engineering bolsters this claim by citing two invoices in early 1991 demanding full payment of the subcontract, suggesting full performance had been accomplished. However, an inspection of Curet's work in February, 1991, revealed certain "deficiencies" in the subcontractor's work which defendants required Curet to "correct". (Civil No. 91–2297, Docket Document No. 18, *Motion Opposing Summary Judgment,* Exhibit

B, *Letter from Architect Cortés to Jiménez of 8/7/1991*, at 1–2). Subcontractor Curet argues that these "deficiencies" were not just corrections or repairs but included the performance of contractual omissions, obviating final performance of the original subcontract until their fulfillment. Regardless of the interpretation of the nature of the "deficiencies", the subcontractual shortcomings were corrected by May 17, 1991, according to Sun Engineering and CNA. (Civil No. 91–2297, Docket Document No. 18, *Motion for Summary Judgment*, Exhibit C, *Sworn Declaration of Jiménez of 8/7/1992*, at 1). Curet, on the other hand, argues that the "deficiencies" were not "fixed" until the "end of May, 1991," *see* Civil No. 91–2297, Docket Document No. 18, *Motion Opposing Summary Judgment*, at 5, and final approval of the subcontract was not provided until June 12, 1991, *see* Civil No. 91–2297, Docket Document No. 18, *Motion for Summary Judgment*, Exhibit D, *Letter from Architect Cortés to Jiménez of 6/12/1991*, at 1, arguably placing Curet's May 27, 1992, suit more than two weeks before the final running of the statute of limitations.

## B. Were the Deficiencies Only Repairs and Corrections?

Even without the added push of the rigors of a summary judgment motion, some of the list of "deficiencies" obviously fall on the side of omissions of subcontract terms, rather than mere corrections and repairs. Two notable examples of *omissions* from the list of so-called deficiencies are the following items: "[i]nstall A/C grille [sic] above security entrance" in the box lobby of the first floor, and "[i]nstall A/C return and A/C diffusser [sic]" in rooms 51–53 of the medical unit. (Civil No. 91–2297, Docket Document No. 19, *Motion Opposing Summary Judgment*, Exhibit B, *Letter from Architect Cortés to Jiménez of 8/7/1991*, at 1–2). Clearly there were also items on the list which fall into the category of repairs or corrections, such as the request to "[a]djust ceiling diffusser [sic]" to the women's serving room. *Id.* at 2. However, since there were omissions, the original subcontract was not yet complete despite the subcontractor's depositional statement, and the statute had not begun to run until the disputed date, sometime between May 17, 1991, and June 12, 1991.

## C. What does the Record Show as the Date of Completion?

The performance date was *not* June 12, 1991, as argued by Curet, unless Curet installed the last air-conditioning grill or diffuser on that day. There is no evidence to support such a proposition. We emphasize that the date of final inspection or approval has no necessary legal relationship to the date of final performance. The only other dates we are presented with are May 17, 1991, from the sworn statement of Sun Engineering's President, Francisco Jiménez, in which Jiménez was "assured" of completion of the subcontract, and the "end of May, 1991," from Curet's pleadings. We are unable to decide with any reasonable level of certainty the specific date of performance or even a sufficiently precise period of days in which performance occurred in order to determine if the statute of limitations began to run before May 27, 1991.

## D. Summary Judgment and the Statute of Limitations

Remembering that this summary judgment motion requires us to look at the record in the light most hospitable to Curet, *see Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990), we must deny defendants' Rule 56 motion on the ground that the record presents a genuine dispute regarding the material fact of the date Curet finished the original subcontract.

Trials are designed to make factual determinations like the one regarding the disputed date of full performance of Curet's subcontract. We believe a trial could best determine the disputed date and any other issues such as the amount of compensation owed to one party by another. If at trial the facts support the contention that the terms of the subcontract were fulfilled before May 27, 1991, Curet's suit will be dismissed as barred by the relevant statute of limitations. If the factual finding is otherwise, Sun Engineering and CNA will be held liable for appropriate compensation.

### E. Equitable Tolling

Curet contends that since Sun Engineering and CNA admit they owe a significant debt to Curet, equity should toll the statute. Such an equitable theory is not beyond reason,[9] but given our determination that the factual issue that controls the relevant statute of limitations needs to be determined in a trial, we do not choose to reach the argument based in equity.

### V.

### Conclusion

In this case involving the Miller Act's one-year statute of limitations for subcontractors to seek damages from a prime contractor or its surety regarding federal building projects, we follow the majority of the circuits and the District of Massachusetts in interpreting the start of the running of the statute of limitations of 40 U.S.C. § 270b(b) as the date of full performance of the subcontract. An approximation of full performance, such as substantial completion, will not stop the tolling of the statute.

As applied in the case before us, we are unwilling to grant a motion for summary judgment against subcontractor Curet because there is significant uncertainty as to the date of final completion of the subcontract that bears directly on the disposition of the motion. The rigors of summary judgment, coupled with the uncertain starting date for the year-long statute of limitations, counsel us to allow this case to proceed to an adjudication on the merits. The summary judgment motion is **DENIED**.

**IT IS SO ORDERED.**

---

9. In certain circumstances, federal courts have equitably tolled the Miller Act's statute of limitations. *See, e.g., United States v. Fidelity & Deposit Co.*, 813 F.2d 697, 699–700 (5th Cir.1987); *United States use of T.L. Wallace Constr., Inc. v.* *Fireman's Fund Ins. Co.*, 790 F.Supp. 680, 685 (S.D.Miss.1992); *United States use of Conservatek, Inc. v. Bee–Lee Corp.*, No. 87–1390–C, 1989 WL 60290, at *2–3, 1989 U.S.Dist. LEXIS 6299, at *6 (D.Kan. May 10, 1989).