# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-01620-SCT

*LAND HOLDINGS I, LLC d/b/a SCARLET PEARL,*
*LLC*

*v.*

*GSI SERVICES, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/2017 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| TRIAL COURT ATTORNEYS: | SAMUEL DEUCALION GREGORY |
| | VINCENT J. CASTIGLIOLA, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | CABLE MATTHEW FROST |
| | SAMUEL DEUCALION GREGORY |
| ATTORNEY FOR APPELLEE: | VINCENT J. CASTIGLIOLA, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Land Holdings I, LLC, d/b/a Scarlet Pearl, LLC ("Casino"), sought to expunge a lien

filed by GSI Services, LLC ("GSI"). The chancellor denied the Casino's petition to expunge

the lien because GSI performed work at the Casino within ninety days of filing its lien.

Finding no error, we affirm the chancellor's order.

## FACTS AND PROCEDURAL HISTORY

¶2.     The Casino contracted with Southern-ITS Corporation ("SITS") for the installation

of a surveillance access-control system at the Scarlet Pearl Casino. SITS subcontracted with

GSI to complete portions of its contract. The contract provided that the Casino would pay SITS $1,493,000, which included $1,242,000 for equipment and $251,000 for labor to install the equipment. The Casino paid SITS the entire amount of the contract.

¶3.     After receiving payment for the contract amount, SITS withheld payment of money owed to GSI for the labor portion of the contract, contending that GSI had yet to perform all work under the contract. SITS subsequently sued GSI for damages, and GSI filed a counterclaim.

¶4.     As a result of SITS's withholding the labor component of its contract, GSI filed a Notice of Claim of Special Lien against the Casino. GSI asserted that it performed labor and/or services on several occasions within ninety days of filing its notice of lien. The Casino sought to expunge the lien, alleging, *inter alia*, that GSI did not file its claim of lien within ninety days of the last work performed.

¶5.     Mark Wiggins, the operations manager with GSI, was the only witness who testified at the hearing. Wiggins testified that he was GSI's project manager for the Casino project from its beginning, that his job was to supervise the work performed by GSI at the Casino, and that he had personal knowledge regarding the work performed by GSI for the Casino during 2015 and 2016.

¶6.     Wiggins testified that, under its subcontract with SITS, "GSI was to provide both equipment and labor in the form of installations for [the] access control system. . . ." The contract began on July 10, 2015, and allotted 270 days for completion. However, GSI was requested to expedite its work so that the Casino could open by December 9, 2015. Although

2

the Casino was able to open on December 9, all of the work required by the contract had not been performed.

¶7.    GSI employee time records submitted as an exhibit at the hearing documented that GSI employees performed work in 2016, after the Casino was operational. Wiggins testified that the work performed in 2016 included labeling equipment, creating spreadsheets for all the equipment, and preparing closeout documents depicting where the equipment was located—all of which was required under the contract. Wiggins testified based on his personal knowledge and through the use of employee time sheets that GSI employees performed work at the Scarlet Pearl Casino on January 15, 2016, February 5, 2016, March 14, 2016, March 15, 2016, March 16, 2016, March 17, 2016, and March 18, 2016.[1] According to Wiggins, all work was performed to provide equipment and installation of equipment at the Casino, as the contract required.

¶8.    Wiggins testified that the GSI time sheets provided accurate records of employee time and responsibilities. Wiggins's testimony and the GSI exhibits regarding hours worked at the Casino were corroborated by and consistent with the evidence introduced by the Casino to support its "punch-list" defense.

---

[1] Jonathan Boyd worked at the Casino on January 15, 2016, for a total of 6.25 hours, preparing and installing a magnetic locking card reader and repairing an entry door. Larry Williams worked a total of 7.25 hours on the access-control system on January 15, 2016, 1.5 hours on January 29, 2016, and 2.75 hours on February 5, 2016, labeling wires and finishing a spreadsheet. Williams also worked with Wiggins on March 14, 2016, for 6.5 hours, marking camera locations. Ian Jolliffe worked 3.75 hours on March 16, 2016, 2.98 hours on March 17, 2016, and 3.5 hours on March 18, 2016, at the Casino. Wiggins testified that Jolliffe was working on "as built drawings" indicating where the equipment was located in the Casino—all work that was required of GSI by the contractor under the contract.

¶9. Wiggins testified that the system was not fully functional to the Casino's expectations until sometime in March 2016. Wiggins testified that GSI had completed all necessary work and provided all necessary equipment within ninety days of filing the lien.

¶10. The chancellor denied the Casino's petition to expunge the lien, finding that the evidence was "undisputed that GSI performed work at the Scarlet Pearl [Casino] as part of its subcontract pursuant to the instructions of the contractor as late as March 18, 2016."

**STATEMENT OF ISSUE**

¶11. The Casino raises only one issue on appeal: Whether the trial court erred in failing to apply the dictates of Mississippi's Little Miller Act, Mississippi Code Section 31-5-51 (Rev. 2010), and the federal Miller Act, 40 U.S.C.A. § 3133 (West 2006), to Mississippi's construction-lien-statute requirement of filing a lien within ninety days of the lien claimant's "last work performed."

**ANALYSIS**

¶12. The Casino argues that GSI failed to file its notice of lien within ninety days of the *last work performed*. The Casino claims the work done by GSI after December 2015 only amounted to corrective measures and punch-list items and that the work was substantially completed in December 2015. The Casino asks this Court to interpret Section 85-7-405 of the Mississippi Code based on federal courts' interpretations of the phrase "last work performed" as it relates to the Miller Act and the Little Miller Act. *See* 40 U.S.C.A. § 3133 (West 2006); Miss. Code Ann. § 31-5-53 (Rev. 2010).

4

¶13.     Section 85-7-405 is Mississippi's comprehensive *lien* statute and reads, in pertinent

part that

> The filing for record of the claim of lien in the office of the clerk of the
> chancery court of the county where the property is located within ninety (90)
> days after the claimant's last work performed, labor, services or materials
> provided, the furnishing of architectural services, or the furnishing or
> performing of surveying or engineering services. . . .

Miss. Code Ann. § 85-7-405(1)(b) (Rev. 2014). The Miller Act and the Little Miller Act are

both statutory schemes relating to *public works projects*. *See* 40 U.S.C.A. § 3133; Miss. Code

Ann. § 31-5-53. Each contains requirements for prime contractors to obtain *bonds* and

provides for actions against those *bonds*. Today's case does not concern a public-works

project or bonds.  Only one reference is made to the Little Miller Act within the entire

section, and that section relates to payment bonds, not liens.[2]

¶14.     Both Miller Acts provide a claimant "one year after the day on which the last of the

labor was performed or material was supplied by the person bringing the action." 40

U.S.C.A. § 3133(b)(4) (West 2006); Miss. Code Ann. § 31-5-53(b) (Rev. 2010). A

subcontractor under our lien statutes has only three months "after the claimant's last work

performed, labor, services or materials provided." Miss. Code Ann. § 85-7-405(1)(b).

---

[2] Section 85-7-431 reads,

> Where a contractor gives a *payment bond* providing payment protection to
> subcontractors and material suppliers to the full extent provided by the
> *Mississippi Little Miller Act found at Section 31-5-51*, the payment *bond* shall
> be in *substitution for the liens* provided for a subcontractor or materialman in
> this article. The contractor's right to a lien is not affected by the provision of
> a bond.

Miss. Code Ann. § 85-7-431 (Rev. 2014) (emphasis added).

5

¶15. The Casino seeks interpretation of our lien statutes based on the language in the Little Miller Act because courts have held that "'labor,' for purposes of the Miller Act limitations period, does not include remedial or corrective work, even if performed as a contractual duty, if such remedial or corrective work was neither significant nor crucial to the operation or functioning of the project." *United States ex rel. T.L. Wallace Constr., Inc. v. Fireman's Fund Ins. Co.*, 790 F. Supp. 680, 684 (S.D. Miss. 1992). *See also* *Gen. Ins. Co. of Am. v. United States ex rel. Audley Moore & Son*, 409 F.2d 1326, 1327 (5th Cir. 1969) (The Fifth Circuit held that the "correction of errors does not extend the time for filing suit."). The Casino argued that the Legislature intended for the lien statute's use of "work performed" and "labor" to be synonymous with that used to interpret bonds obtained for public-works projects.

¶16. The chancellor declined to interpret Section 85-7-405, instead of relying on the plain language of the statute. The chancellor held that

> While there was testimony that the surveillance system and access control system which were the subject of the subcontract were operational as early as December 2015 and the casino was able to open on December 9, 2015, the preponderance of the evidence is that GSI performed work as described by § 85-7-405(1)(b) within 90 days of April 14, 2016. The wording of the statute is clear, making reference only to the date of the lien claimant's "last work performed, labor, services or materials provided." The statute makes no mention of whether or not the project was substantially complete. It is also worthy of note that all the work testified to as performed within 90 days of the date of lien was performed within the 270 days provided in the subcontract for performance of the contract. In addition, there is no evidence to indicate that the work performed during that 90-day period was for any ulterior motive such as extension of the time to file a lien. To the contrary, the work was performed at the insistence and direction of the prime contractor.

¶17. We find no no error in the chancellor's finding.

"[W]here the language in a statute is plain and unambiguous, 'it is not within the province of this court to add to the law as the Legislature has written it.'" *Lewis v. Hinds Cty. Circuit Court*, 158 So. 3d 1117, 1122 (Miss. 2015) (quoting *First Nat'l Bank of Memphis v. State Tax Comm'n*, 210 Miss. 590, 49 So. 2d 410, 412 (1950)).

> No principle is more firmly established, or rests on more secure foundations, than the rule which declares when a law is plain and unambiguous, whether it be expressed in general or limited terms, that the Legislature shall be deemed to have intended to mean what they have plainly expressed, and, consequently, no room is left for construction in the application of such a law.

> *Id.*

*City of Tchula v. Miss. Pub. Serv. Comm'n*, 187 So. 3d 597, 599 (Miss. 2016). The chancellor properly interpreted Section 85-7-405 as written and applied the facts of the case to the requirements of the statute. The chancellor determined that GSI provided labor, services, and/or material required by the contract and at the direction of the Casino within ninety days of the lien's being filed.

¶18.    We find that the chancellor did not err in denying the Casino's petition to expunge the lien filed by GSI. GSI fully complied with Section 85-7-405 by filing its lien within ninety days of its "last work performed, labor, services or materials provided. . . ." The evidence adduced during the hearing supports the chancellor's finding that work, required under the contract, was performed on numerous dates and as late as March 18, 2016. Although the Casino was able to open in December 2015, prior to the work's being completed by GSI, the statute makes no reference to work's being substantially completed as opposed to its being the "last work performed."

**CONCLUSION**

7

¶19. We affirm the chancellor's denial of the Casino's petition to expunge GSI's lien, because GSI complied with all the requirements of Section 85-7-405 when it filed its lien.

¶20. **AFFIRMED.**

**WALLER, C.J., KITCHENS, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**